UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| HECTOR FERNANDO CANALES-ROBLES and SAAMIR LOPEZ-CERVANTES, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br> v.<br><br>COLETTE S. PETERS, former Director, Oregon Youth Authority (OYA) and current Director, Oregon Department of Corrections (ODOC); FARIBORZ PAKSERESHT, former Director OYA; ROBERT JESTER, former Director, OYA; BOBBY MINK, former Director, OYA; MICHAEL RIGGAN, former Superintendent, MacLaren; DAN BERGER, Superintendent, MacLaren; SID THOMPSON, former Superintendent, MacLaren,<br><br>      Defendants. | Case No. 6:16-cv-01395-AC<br><br>OPINION AND ORDER |

Page 1 – OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiffs Hector Fernando Canales-Robles ("Canales-Robles") and Saamir Lopez-Cervantes ("Lopez-Cervantes") (collectively "Plaintiffs") bring this civil rights action against former directors for the Oregon Youth Authority and former superintendents of the MacLaren Youth Correctional Facility (collectively, "Defendants"). (Sec. Am. Compl. ¶¶ 4-12, ECF No. 92). "On behalf of themselves and others similarly situated," Canales-Robles and Lopez-Cervantes allege Defendants violated their rights under the Fourteenth Amendment Due Process Clause by denying them access to the courts. (*Id.* ¶¶ 68-70). Currently before the court is Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel. ("Mot. for Class Cert.," ECF No. 106). For the following reasons, Plaintiffs' motion is DENIED.[1]

*Background*

Plaintiffs Canales-Robles and Lopez-Cervantes are Oregon residents formerly in the physical custody of the Oregon Youth Authority ("OYA") and presently in the custody of the Oregon Department of Corrections ("ODOC"). (Sec. Am. Compl. ¶¶ 4-5). In 2008, Canales-Robles was sentenced to 180 months in the legal and physical custody of the ODOC for crimes committed in April 2007, when he was seventeen years old. (*Id.* ¶ 13). That same year, Lopez-Cervantes was sentenced to 130 months in ODOC custody, also for crimes committed when he was seventeen years old. (*Id.* ¶ 14).

---

[1] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

Page 2 – OPINION AND ORDER

Both men were eighteen years old at the time of sentencing. (*Id.* ¶¶ 13-14). Because of their ages,[2] both were temporarily transferred to the physical custody of the OYA and confined at MacLaren Youth Correctional Facility in Woodburn, Oregon. (*Id.* ¶¶ 15-20). Canales-Robles remained in the physical custody of the OYA until August 1, 2014, when he was transferred to the physical custody of the ODOC. (*Id.* ¶ 19). Lopez-Cervantes remained in the physical custody of the OYA until March 25, 2015, when he was also transferred to the physical custody of the ODOC. (*Id.* ¶ 20).

While in the physical custody of the OYA, Canales-Robles and Lopez-Cervantes "had not yet graduated high school" and had "no legal knowledge, training, or experience of any kind." (*Id.* ¶¶ 34, 36). They allege Defendants did not provide youth in OYA custody "access to attorneys at any time," nor "access to a law library of any kind, assistance from persons trained in the law, or any other provisions that would assist OYA prisoners in the preparation and filing of legal papers at any time." (*Id.* ¶¶ 37-38). They further allege Defendants "never made the necessary legal resources accessible" to assist youth in OYA custody in challenging their sentences directly or collaterally. (*Id.* ¶¶ 40-44, 49-50). Given this lack of resources, Canales-Robles and Lopez-Cervantes allege Defendants precluded them from timely filing for post-conviction relief ("PCR") under state law, from exhausting their state court remedies, and from successfully petitioning for writs of habeus corpus. (*Id.* ¶¶ 26-33).

---

[2] *See* ORS 137.124(5)(a)(B) ("When a person under 18 years of age at the time of committing the offense and under 20 years of age at the time of sentencing is committed to the Department of Corrections under ORS 137.707 . . . the Department of Corrections shall transfer the physical custody of the person to the Oregon Youth Authority as provide in ORS 420.011 if: . . . because of the person's age, immaturity, mental or emotional condition or risk of physical harm to the person, the person should not be incarcerated in a department of Corrections institution.").

Page 3 – OPINION AND ORDER

Canales-Robles and Lopez-Cervantes allege Defendants violated the "right of access to the courts" under the Fourteenth Amendment Due Process Clause by failing to assist and by actively impeding youth in OYA custody from filing non-frivolous claims for post-conviction relief. (*Id.* ¶¶ 68-70). They seek nominal, compensatory, and punitive damages on behalf of an "ODOC subclass" and assert the following class action allegation:

> Plaintiffs bring this case on behalf of themselves and all other persons who were a) placed in the physical custody of the OYA following convictions in adult court, b) had non-frivolous claims to bring but were subjected to the policies and practices described, and c) were transferred to the physical custody of the ODOC after October 31, 2016.

(*Id.* ¶ 67). Plaintiffs presently move for class certification. (Mot. for Class Cert. at 1). Defendants argue Plaintiffs have not satisfied the procedural requirements necessary for certification, and thus, their motion should be denied. (Response to Mot. for Class Cert. ("Response") at 6, ECF No. 116.)

*Legal Standard*

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979). A plaintiff seeking class certification must affirmatively demonstrate the requirements of Rule 23(a) and Rule 23(b) are satisfied. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Under Rule 23(a), the plaintiff must satisfy four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequate representation. FED. R. CIV. P. 23(a). After meeting this threshold, the plaintiff must demonstrate "through evidentiary proof" that the putative class action falls under one of the

three prongs of Rule 23(b). FED. R. CIV. P. 23(b); *Comcast Corp. v. Behrend*, 568 U.S. 27, 33 (2013).

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 351. Instead, the court conducts a "rigorous analysis" to determine whether a plaintiff has satisfied the certification standards by a preponderance of the evidence. *Id.* at 350; *see Reyes v. Netdeposit, LLC*, 802 F.3d 469, 485 (3rd Cir. 2015). In conducting this analysis, the court considers the pleadings and extrinsic evidence to determine whether certification is appropriate. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 484 (2nd Cir. 1995); *Blackie v. Barrack*, 524 F.3d 891, 900-01 (9th Cir. 1975). Although the analysis is not primarily focused on the merits of the plaintiff's underlying claim, there is frequently "some overlap." *Comcast Corp.*, 568 U.S. at 33-34.

*Discussion*

Plaintiffs request this court certify an "issue class" pursuant to Rule 23(c). (Mot. for Class Cert. at 8). Specifically, they request that "there be a class trial as to the issue of [OYA's] liability and the availability of punitive damages, and then a separate series of mini-*Teamster* trials as to the amount of damages to be awarded to each member of the class" who can demonstrate non-frivolous PCR claims and actual injury. (*Id.* at 9). In their motion, Plaintiffs propose to certify the following class: "All person[s] who were in the physical custody of the OYA between October 31, 2016 and July 12, 2018." (*Id.* at 2, 9).

Plaintiffs' motion is deficient in several respects. As an initial matter, their request for class certification misinterprets the procedural requirements of Rule 23. "When appropriate," Rule 23(c) permits a court to certify a "class action with respect to particular issues." FED. R.

CIV. P. 23(c)(4). However, this rule "does not purport to modify the certification requirements of Rule 23(b)." McLaughlin on Class Actions § 4:43 (18th Ed.) (2021); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). Therefore, Plaintiffs must still satisfy the requirements of both Rule 23(a) and Rule 23(b). As addressed below, Plaintiffs have not satisfied these requirements. Moreover, their class action complaint fails to comply with the pleading requirements of Local Rule 23-2. (requiring parties to "explain in separately titled and numbered paragraphs" how their action meets the procedural elements of FRCP 23).

Additionally, the scope of the class proposed by Plaintiffs cannot be accurately determined. Plaintiffs propose significantly different classes in their Second Amended Complaint and in the instant motion.³ Notably, the two proposed classes are temporally inconsistent. In the complaint, Plaintiffs propose to certify a class of persons "placed in the physical custody of the OYA following convictions in adult court" who were then "transferred to the physical custody of the ODOC after October 31, 2016." (Sec. Am. Compl. ¶ 67). While this description specifies the date on which proposed class members were transferred *out of* OYA custody, it does not explain when these class members must have *first entered* OYA custody. Conversely, in the instant motion, Plaintiffs propose a class comprised of "all persons in the physical custody of OYA between October 31, 2016 and July 12, 2018." (Mot. for Class Cert. at 2, 9). Accordingly, the proposed classes do not even overlap. Plaintiffs' first proposed class would include those in OYA

---

³ A review of Plaintiff's prior complaints provides no clarification on this point. Plaintiffs' original Complaint, filed July 7, 2016, did not contain a class action allegation. (*See generally* Compl., ECF No. 3). Their First Amended Complaint, filed October 31, 2017, appears to propose three classes: a "Plaintiff Class," an "ODOC Class," and an "OYA Subclass," but does not allege if and how any of these classes satisfy Rule 23. (First Am. Compl. ¶¶ 73-75, ECF No. 57).

Page 6 – OPINION AND ORDER

custody *before* October 31, 2016, while their present proposal would include only those in OYA custody *after* that date.

The class proposed in the instant motion also targets a broader group of persons in OYA custody than the class described in the complaint. In general, youth are committed to the physical custody of the OYA facility through two avenues.[4] Under the first avenue, a juvenile judge commits the youth—referred to as an "adjudicated youth"—directly to OYA closed custody. ORS 420A.010(5)(a). Under the second avenue, an adult court commits the youth directly to the Oregon Department of Corrections ("ODOC"), but because of his or her age, the youth remains in the physical custody of the OYA until age 25. ORS 420A.010(5)(b); ORS 137.124. Youth committed to OYA custody through this avenue are referred to as "ODOC youth." (*Id.*). Canales-Robles and Lopez-Cervantes were transferred to OYA custody under this second avenue, and thus, are ODOC youth. Similarly, the class described in their complaint appears to target only ODOC youth. In contrast, the class proposed in the instant motion does not distinguish between ODOC and adjudicated youth, and instead purports to include "all persons" in OYA custody.

Given the inconsistencies in Plaintiffs' proposed classes, the court exercises its discretion to specify the class that will be analyzed for purposes of this certification motion. *See* FED. R. CIV. P. 23(c)(1)(B); *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (concluding a district court did not abuse its discretion by declining to allow the plaintiff to redefine the proposed class). Acknowledging Defendants' request that the class not be "reinvented" nearly six years after this action was first filed, the court defines this class narrowly. (*See* Resp. to Class

---

[4] A youth may also end up in an OYA closed-custody facility as a result of parole or probation revocation. *See* ORS 420A.120; OAR 416-300-0080. This nuance does not aid Plaintiffs; instead, it undermines an argument that the class shares common issues and typical claims.

Page 7 – OPINION AND ORDER

Cert. at 9, ECF No. 116). This narrow definition also benefits Plaintiffs, given the "rigorous analysis" of class certification.

First, as described in the Second Amended Complaint, the proposed class is limited to youth who were placed in the physical custody of the OYA following convictions in adult court; in other words, to ODOC youth. Second, because the complaint does not contain a time period in which these youth must have been in OYA custody, the court borrows the timeframe specified in Plaintiff's motion for certification. Accordingly, the court will analyze the following proposed class: ODOC youth with non-frivolous PCR claims who were in the physical custody of the OYA between October 31, 2016 and July 12, 2018. For the reasons stated below, certification is denied.

I.  Plaintiffs have not satisfied the prerequisites of Rule 23(a)

   1.  *Numerosity*

Rule 23(a)(1) requires a plaintiff to show that the proposed class "is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The numerosity prerequisite is not tied to a fixed numerical threshold; instead, the court evaluates whether joinder is impracticable based on the specific facts of the case. *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Plaintiffs need not allege the exact number of proposed class members; however, "mere speculation of the number of class members involved does not satisfy" the numerosity prerequisite. *In re LDK Solar Securities Litigation*, 255 F.R.D. 519, 525 (N.D. Cal. 2008) (citing *Freedman v. Louisiana Pac. Corp.*, 922 F. Supp. 377, 398 (D. Or. 1996)).

Without offering any evidentiary support, Plaintiffs assert there were "hundreds of youth in [OYA] custody during the time period in which OYA did not provide legal resources to youth inmates." (Mot. for Class Cert. at 10). Not only does this contention fail to distinguish the

Page 8 – OPINION AND ORDER

population of *ODOC youth* in OYA custody, it also neglects to address the relevant time period proposed by Plaintiffs in their motion for certification. Plaintiffs next contend that, because a pilot program established by the Lewis & Clark Law School's Criminal Justice Reform Clinic[5] assisted twenty-three youth in OYA custody with PCR matters in 2019, this number "[e]xtrapolated over two years . . . suggest[s] that there would be 138 individuals in need of legal assistance who were not provided them." (Mot. for Class Cert. at 10). This contention is based on speculation. Moreover, the evidence offered by the Plaintiffs is from 2019, outside of the time periods proposed in their motion and complaint. Because Plaintiffs have not offered evidence of the number of ODOC youth in OYA custody during the relevant period or the number of those youth with nonfrivolous PCR claims, they have not satisfied numerosity.

2. *Commonality*

Class certification is appropriate only when the action presents "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). To satisfy the commonality prerequisite, a plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349. "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009). Thus, while class

---

[5] The pilot program is called the Youth Legal Clinic ("YLC") and began in August 2019. (Decl. of Matthew C. Ellis ("Ellis Decl.") ¶ 7, Ex. 1 at 1-5, ECF No. 108); (Decl. of Aliza Kaplan ("Kaplan Decl.") ¶ 8, ECF No. 118).

members need not have every issue in common, they must depend on a "common contention" capable of classwide resolution such that "determination of its truth or falsity will resolve an issue that is central to each of the claims in one strike." *Id.* at 359.

Plaintiffs propose this court certify a class "as to the issues of liability and the availability of punitive damages." (Mot. for Class Cert. at 8). They contend the following questions are common to the class:

> (1) Whether Defendants, between October 31, 2016 and July 7, 2018, had an unconstitutional policy and practice of denying those in OYP custody access to the courts; and (2) Whether the decision to not provide legal resources was intentional, such that punitive damages are appropriate, and potentially, the amount of punitive damages.

(*Id.* at 2, 12).

These questions fail to establish commonality for two reasons. First, Plaintiffs do not adequately explain how resolution of these questions will generate common *answers* to resolve their claims. Indeed, in their briefing, Plaintiffs do not address this point at all and instead simply rephrase the questions articulated in the introduction to their motion.[6] Second, Plaintiffs proposed "common questions" ignore the potential nuances underpinning their constitutional claim. As Defendants note, Plaintiffs proposed questions "fail to account for the fact that OYA serves several populations of youth" with legally significant distinctions. (Response at 13). Although the court has narrowed its commonality analysis to ODOC youth, discerning whether the OYA denied each youth a right of "access to the courts" still likely requires particularized inquiries ill-suited to a

---

[6] In rephrasing their first question within the motion, Plaintiffs ask "[w]hether Defendants' failure to provide legal resources violates the *First* Amendment." (Mot. for Class Cert. at 12). The court presumes Plaintiffs intended to refer to the Fourteenth Amendment, as stated in their pleadings and broader briefing.

Page 10 – OPINION AND ORDER

class action. *See M.D. ex rel Stukenberg v. Perry*, 675 F.3d 832, 843 (5th Cir. 2012) (action alleging systematic failure to fulfill statutory obligations to students with disabilities did not satisfy commonality because resolution of the statutory obligations "must be answered separately for each child based on individualized questions of fact and law, and the answers are unique to each child's particular situation").

3.  *Typicality*

A plaintiff must show the named parties' claims or defenses are typical of the claims or defenses of the class. FED. R. CIV. P. 23(a)(3). When analyzing typicality, courts look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.3d 497, 508 (9th Cir. 1992); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

Canales-Robles's and Lopez-Cervantes's claims are not typical of the claims of the proposed class. Indeed, because both were transferred from OYA custody prior to October 31, 2016, they are not even members of the class they propose to represent.[7] As such, their constitutional claims would likely rely on different evidence, witnesses, and facts than those of the proposed class. Moreover, as Defendants note, there is significant risk that defenses unique to

---

[7] Canales-Robles and Lopez-Cervantes—who were transferred to ODOC custody in 2014 and 2015, respectively—do not even fall within class proposed in their Second Amended Complaint.

Page 11 – OPINION AND ORDER

Canales-Robles and Lopez-Cervantes would potentially prejudice any class claims. (Response at 14-15).

    4.    *Adequate Representation*

The final prerequisite mandates that "the representative parties fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "This factor requires: (1) that the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2) that plaintiffs are represented by qualified and competent counsel." *Capps v. U.S. Bank Nat'l Ass'n*, Case No. 09-752-PK, 2009 WL 5149135, *5 (D. Or. 2009) (citation and internal quotations omitted). As discussed, Canales-Robles and Lopez-Cervantes are not even members of the classes they have proposed, and thus, cannot adequately represent those classes. Further, given the substantial deficiencies in the motion for class certification, the court is not persuaded that Plaintiffs' counsel would, at this time, adequately represent this class action.

II.    <u>Plaintiffs cannot maintain this action under Rule 23(b)</u>

Plaintiffs do not allege under which prong of Rule 23(b) they propose to maintain this class action. Moreover, because Plaintiffs have not satisfied the prerequisites of Rule 23(a), the court declines to continue its analysis under this rule.

//

//

//

//

//

//

*Conclusion*

Because Plaintiffs have not satisfied the procedural requirements of Rule 23, their motion for class certification (ECF No. 106) is DENIED.

DATED this 3rd day of March, 2022.

_____
JOHN V. ACOSTA
United States Magistrate Judge